IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DUSTAN SPROWLS,

      Plaintiff,

      v.

WESTERN PLAINS MEDICAL
COMPLEX, et al.,

      Defendants.

Case No. 6:21-cv-01280-HLT-JPO

## MEMORANDUM AND ORDER

This case arises out of the termination of Plaintiff Dustan Sprowls's employment. Sprowls sued Defendants Western Plains Medical Complex and Life Point Health for breach of contract and wrongful discharge in state court. Defendants removed the case and move to dismiss on grounds that there is no personal jurisdiction over Life Point Heath and the complaint fails to state a claim. Doc. 9. The Court finds that Sprowls fails to state a claim and grants the motion.

**I.    BACKGROUND**

The following facts are taken from the complaint and attached exhibits, *see* Doc. 1-1, and are accepted as true for purposes of resolving the motion to dismiss.[1] On December 10, 2015, Sprowls took a position as Supervisor of Respiratory Therapy at Western Plains Medical Complex. Sprowls alleges he "was asked to review a written Employment Offer, agree to its terms by signing and dating the offer and returning to the representative of the Western Plains Medical Complex." *Id.* at 2-3. The offer letter is referenced in and attached to the complaint. *Id.* at 5-7. It states that it is "formal confirmation of our verbal offer" contingent on completion of pre-employment tasks.

---

[1]    Documents referenced in and attached to the complaint are properly considered as part of the complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

*Id.* at 5. It lists an hourly rate that will be paid "[i]f you accept this job offer" and states that Sprowls will be paid a $5000 sign-on bonus "for a two (2) year employment commitment to be paid in 5 installments at successful completion of a 90 day evaluation, 6 months, 12 months, 18 months and 24 months." *Id.* at 3, 5. The offer letter includes information about relocation costs and states: "Should you accept the relocation, you will be required to sign a Relocation Plan and Promissory Note that requires a two (2) year employment commitment to WPMC in exchange for the relocation assistance." *Id.* at 6.

The offer letter also contains the following provision:

> The above terms and conditions of employment are intended to be an outline of all of the material provisions relating to your compensation and benefits as an employee of WPMC, and should not be considered a contract of employment. WPMC is an "at-will" employer, and you may resign or be discharged at any time with or without prior notice.

*Id.* It finally states that the original executed copy of "this agreement evidencing your acceptance of our Offer of Employment" should be provided to human resources and that a copy should be kept by Sprowls for his personal records. *Id.* The copy attached to the complaint is not signed. *Id.* at 7.

On May 9, 2017, Sprowls was fired for unknown reasons despite having excellent job performance. *Id.* at 3. As a result of his termination, Sprowls has been damaged in excess of $75,000. *Id.*

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the

2

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

### III.   ANALYSIS

#### A.   Failure to State a Claim

##### 1.   Breach of Contract

Defendants move to dismiss the breach-of-contract claim because Sprowls was an at-will employee who could be fired at any time and there was no employment contract. Doc. 10 at 10-12. A breach-of-contract claim under Kansas law requires, among other things, the existence of a contract between the parties. *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006). As it pertains to employment, Kansas is an at-will employment state, meaning employment can be terminated by either party in the absence of an express or implied contract. *Abbott v. BNSF Ry. Co.*, 383 F. App'x 703, 708 (10th Cir. 2010).

In his response, Sprowls states that there was an <u>implied</u> contract between the parties. Doc. 16 at 4.[2] An implied employment contract exists where there are facts suggesting that "a policy or

---

[2] Based on Sprowls's arguments in response to the motion to dismiss, it appears he has abandoned any theory that the offer letter itself constitutes an express written contract. As noted above, the offer letter states that it "should not be considered a contract of employment." Doc. 1-1 at 6. Other courts have held that such specific disclaimers doom express-contract claims. *Ramirez Cap. Servs., LLC v. McMahan*, 2021 WL 5907791, at *3-4 (E.D. Tex. 2021) (finding no contract was formed where disclaimer stated, in part, "this offer letter is not an employment contract"); *Romano v. First Midwest Bancorp, Inc.*, 2021 WL 2712026, at *3-4 (N.D. Ill. 2021) ("Considering the language of the offer letter, its purpose, and the alleged circumstances surrounding it, the signed offer letter does

3

program of the employer, either express or implied, restricts the employer's right of termination at will." *Masterson v. Boliden-Allis, Inc.*, 865 P.2d 1031, 1034 (Kan. Ct. App. 1993); *see also Abbott*, 383 F. App'x at 708. An implied contract exists where facts and circumstances show mutual intent to contract. *Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1198 (D. Kan. 2016). An employee's unilateral expectations alone are not sufficient. *Auld v. Value Place Prop. Mgmt. LLC*, 2010 WL 610690, at *3 (D. Kan. 2010).[3]

In support of his implied-contract claim, Sprowls points to an email from one of Defendants' employees that he says modified the offer letter to include a $1000 relocation reimbursement. *See* Doc. 16-3. He argues this demonstrates a bargained-for contract, and the fact that he worked for and was terminated by Defendants shows offer and acceptance. Doc. 16 at 4-5. Finally, he contends the provision requiring him to make a two-year commitment in exchange for relocation assistance "eliminates Plaintiff's side of the employment at will" and "Defendant[s] should be held to the same contract." *Id.* at 5.

As a preliminary matter, Sprowls's position in his response that there was an implied contract seems at odds with the complaint, which alleged the existence of a written contract. Doc. 1-1 at 2-3. Nor are there any facts pleaded in the complaint regarding the $1000 relocation-reimbursement email. In evaluating whether Sprowls has stated a claim, the Court is limited to the well-pleaded allegations of the complaint, not factual allegations made in response to a motion to dismiss. However, even if the Court did consider these facts and arguments, Sprowls still has not plausibly alleged the existence of an implied contract.

---

not demonstrate that it was intended to be an enforceable contract . . . ."); *Moore v. Thomson Reuters (GRC) Inc.*, 2017 WL 4083582, at *3 (S.D.N.Y. 2017) ("Here, the contract claim fails because, by its express terms, the Offer Letter is not a binding and enforceable contract.").

[3] Claims based on implied contracts have a three year statute of limitations in Kansas. *See* K.S.A. § 60-512(1); *see also LCL, LLC v. Falen*, 390 P.3d 571, 580 (Kan. Ct. App. 2017). The parties do not address whether any implied-contract claim by Sprowls would be timely.

As Defendants note, Sprowls's negotiation of a relocation bonus via email does not demonstrate that the parties bargained for an employment of any set duration, *see Auld*, 2010 WL 610690, at *3 ("He has not identified any conduct by Defendants, nor any circumstances of his employment that would suggest the parties intended his employment to be for any fixed period of time or terminable only for cause."), or that Defendants agreed to restrict their right to terminate Sprowls, *see Masterson*, 865 P.2d at 1034. Although the offer letter refers to a two-year commitment if relocation assistance is accepted, there are no facts—pleaded or otherwise—that Sprowls actually made such a commitment. Nor does the fact that Sprowls worked for Defendants demonstrate that a contract for employment existed between the parties. *See Abbott*, 383 F. App'x at 708 (noting that Kansas is an at-will employment state).[4]

Also problematic for Sprowls is the caveat in the offer letter that it "should not be considered a contract of employment" and that he could be discharged at any time as an at-will employee. Doc. 1-1 at 6. This contradicts any mutual intent to contract between the parties. *See Auld*, 2010 WL 610690, at *3. Sprowls argues that the disclaimer in the offer letter is not dispositive of whether there was a contract between the parties absent evidence that the disclaimer was brought to his attention. Doc. 16 at 4. Sprowls is correct that disclaimers are not always dispositive as to whether a contract was implied. *Abbott*, 383 F. App'x at 709 (citing *Morriss v. Coleman Co., Inc.*, 738 P.2d 841, 849 (Kan. 1987)). But this is generally where there are other facts supporting the existence of an implied contract. *See Morriss*, 738 P.2d at 848; *see also Masterson*, 865 P.2d at 1034. Disclaimers are otherwise "strong evidence that the employer did

---

[4] Although Sprowls does not rely on it in his response, the complaint also refers to provision in the offer letter for a $5000 bonus in exchange for a two-year commitment. Doc. 1-1 at 3. As Defendants note, however, this provision did not guarantee any durational employment, as it was payable in five installments and contingent on "successful completion of a 90-day evaluation, 6 months, 12 months, 18 months and 24 months." *Id.* at 5.

not have such an intent, and especially where the evidence shows that the employee has read the disclaimer." *Abbott*, 383 F. App'x at 709.

Here, Sprowls has not pleaded any facts supporting the existence of an implied contract, other than the offer letter, which specifically disclaims being a contract. And he has not pleaded any facts to suggest he was unaware of the disclaimer. Certainly, Sprowls does not need to prove his case at the pleading stage. But he must at least plead some facts to suggest that Defendants intended to form a contract with him or otherwise limit why he could be fired. On this point, he falls short.

Finally, Sprowls's hope that "[a] signed contract may exist, and should be found through discovery," Doc. 16 at 5, is not enough. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In sum, Sprowls has failed to state a claim for breach of contract.

### 2. Wrongful Termination

To the extent Sprowls asserts a wrongful-termination claim under Kansas law,[5] Defendants argue that claim is untimely and is not factually supported. Doc. 10 at 12-13. Claims for wrongful termination under Kansas law have a two-year statute of limitations. *Whye v. City Council for City of Topeka*, 102 P.3d 384, 385 (Kan. 2004); *see also* K.S.A. § 60-513(a)(4). Sprowls alleges he was wrongfully discharged on May 9, 2017. Doc. 1-1 at 3. This case was filed September 6, 2021, well outside the statute of limitations for wrongful termination. Additionally, the complaint includes no

---

[5] It's unclear if Sprowls does assert a wrongful-termination claim. The complaint does not include any enumerated claims. It does mention wrongful termination. Doc. 1-1 at 3 ("On or around May 9, 2017 Plaintiff was wrongfully discharged by defendant for unknown reasons, despite Plaintiff's excellent job performance."). But it's unclear whether this allegation relates to Sprowls's breach-of-contract claim or is a separate claim for wrongful termination.

factual allegations to plausibly support a wrongful-termination claim. It only states that Sprowls was "wrongfully discharged by defendant for unknown reasons." Doc. 1-1 at 3. Such conclusory statements are not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678-79.

Sprowls does not address these arguments. Accordingly, Defendants' motion on this point is unopposed. To the extent Sprowls does assert a wrongful-termination claim, it is dismissed for failure to state a claim.

### B. Personal Jurisdiction

Defendants also argue that the Court lacks personal jurisdiction over Defendant Life Point Health. Because the Court finds that Sprowls fails to state a claim, it does not reach this issue.[6]

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss (Doc. 9) is GRANTED. This case is DISMISSED.

IT IS SO ORDERED.

Dated: February 16, 2022                              /s/ *Holly L. Teeter*
                                                      HOLLY L. TEETER
                                                      UNITED STATES DISTRICT JUDGE

---

[6] Although the Court does not reach this issue, it agrees that Defendants have raised serious questions about whether there is personal jurisdiction over Life Point Health. Defendants' motion cites several cases dismissing Life Point Health for lack of personal jurisdiction where its subsidiaries were sued. *See* Doc. 10 at 8; *see also Wirth v. PHC Las Cruces Inc.*, 2021 WL 2805357, at *6 (D.N.M. 2021) (noting the substantive and legal distinction between parent and subsidiary corporations); *Lawson v. Lifepoint Hosps., Inc.*, 2017 WL 4365814, at *4 (W.D. La. 2017) ("Minden is a wholly-owned subsidiary of a wholly-owned subsidiary of a wholly-owned subsidiary of Lifepoint. . . . Far more is required for the contacts of Minden to be attributed to Lifepoint within the Fifth Circuit."); *Mundel v. LifePoint Hosp., Inc.*, 2006 WL 1328828, at *2 (D. Ariz. 2006) (noting failure to impute actions of subsidiaries to Life Point). Although these cases are not necessarily dispositive over whether this Court has personal jurisdiction over Life Point Health, the Court notes that Sprowls does not address these authorities at all. Further, although Sprowls argues that Life Point Health employees were involved in recruiting and negotiating his employment, one of the exhibits he cites states that Life Point Health is a trade name for a group of affiliated entities, that it does not have any employees, and any reference to "Life Point" employees refers to employees of Life Point Heath's subsidiaries. Doc. 16-2 at 2.